Jerry A. Crandall (CSB No. 250192)
jac@crandalltech.com
CRANDALL TECHNOLOGIES LLC
1590 Heavenly View Trail
Reno, NV 89523
Telephone:  775.525.8777
Facsimile:   775.501.5157

*Attorney for Plaintiff*
*CRANDALL TECHNOLOGIES LLC*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRANDALL TECHNOLOGIES LLC, a Nevada limited liability company, | Case No. 3:18-cv-1396-CAB-(MDD) |
| Plaintiff, | **PLAINTIFF CRANDALL TECHNOLOGIES LLC'S RESPONSIVE CLAIM CONSTRUCTION BRIEF** |
| vs. | [Patent L.R. 4.4.b] |
| GREATCALL INC., a Delaware corporation, | Judge:  Hon. Cathy Ann Bencivengo |
| Defendant. | FAC filed:  March 4, 2019 |
| | Initial Complaint filed:  June 25, 2018 |
| | Patent-in-suit:  US 8,854,789 B2 |

///
///
///
///
///
///

# TABLE OF CONTENTS

**Page**

I.   OVERVIEW …………………………..……………………………… 1

II.  TERMS IN DISPUTE …………………………………………… 1

    1.   pressure sensor unit ………………………………………… 1

    2.   defense unit …………………………………………………… 4

    3.   defense event ……………………………………………….. 6

    4.   manual selector ……………………………………………9

    5.   self-defense system …………………………………… 10

    6.   wireless transmitter, comparator, conductive energy device ……….. 10

III. CONCLUSION …………………………………………………….. 10

PLAINTIFF'S RESPONSIVE
CLAIM CONSTRUCTION BRIEF

i

Case No. 3:18-cv-1396-CAB-MDD

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Am. Permahedge, Inc. v. Barcana, Inc.,*
     105 F.3d 1441 (Fed. Cir. 1997) ……………………………………… 6, 7

*Apex v. Raritan Computer,*
     325 F.3d 1364 (Fed. Cir. 2003) ………………………………………… 4

*Callicrate v. Wadsworth Mfg.,*
     427 F.3d 1361 (Fed. Cir. 2005) ……………………………………… 6, 7

*Intel Corp. v. VIA Techs.,*
     319 F.3d 1357 (Fed. Cir. 2003) ………………………………………… 4

*Immunex Corporation v. Sanofi et al.,*
     No. CV 17-02613 SJO (PLAx),
     2018 WL 6252460 (C.D. Cal. Aug. 24, 2018) …………………………… 3

*IPS Group, Inc. v. CivicSmart, Inc.,*
     No. 17-cv-632-CAB-(MDD),
     2018 WL 6567843 (S.D. Cal. Dec. 13, 2018) (J. Bencivengo) …………… 2

*Laitram Corp. v. Cambridge Wire Cloth Co.,*
     863 F.2d 855 (Fed. Cir. 1988) ……………………………………….. 6, 7

*Phillips v. AWH Corp.,*
     415 F.3d 1303 (Fed. Cir. 2005) ……………………………………… 1, 6

*Pitney Bowes, Inc. v. Hewlett-Packard Co.,*
     182 F. 3d 1298 (Fed. Cir. 1999) …………………………………… 10

*Williamson v. Citrix Online, LLC,*
     792 F.3d 1339 (Fed. Cir. 2015) ………………………………………… 3

*Zeroclick, LLC v. Apple Inc.,*
     891 F.3d 1003 (Fed. Cir. 2018) ……………………………………. 3, 4, 6

**Constitutional Authorities**

U.S. Const. art. I, §8 cl. 8 ……………………………………………… 7

**Statutes**

35 U.S.C. §112 ……………………………………………………… 2, 3, 4, 6

**Other Authorities**

MPEP §2181(I)(A) …………………………………………………   2

Patent L.R. 4.4.b ……………………………………………………… 1

Pursuant to Patent L.R. 4.4.b and the Court's Order of November 14, 2018 [Doc. No. 17], Plaintiff Crandall Technologies LLC ("Plaintiff") hereby presents its Responsive Claim Construction Brief and appended Supporting Evidence (Appendices A-E)[1] with respect to the patent-in-suit (US 8,854,789 B2)[2], a true and correct copy of which was previously filed with the Court in Doc. No. 21-7.[3]

# I.   OVERVIEW

It is an established tenant of patent law that claims define the invention and limitations from the specification should not be imported into the claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc).  In Doc. No. 30, Defendant GreatCall Inc. ("Defendant") once again violates this principle by seeking claim constructions that import limitations from illustrative embodiments of the specification.  Such constructions are inconsistent with the claims' plain language and do not reflect the careful balance of using disclosed embodiments to enable one skilled in the art to practice the invention without confining the claims to those example embodiments. *See Phillips*, 415 F.3d at 1323.

# II.   TERMS IN DISPUTE

## 1.   pressure sensor unit

In its Opening Claim Construction Brief [Doc. No. 31], Plaintiff explained that, in view of (i) the structural context recited in Claims 1 and 17, (ii) the additional context found in the specification and the prosecution history[4] and (iii) the parties' agreed construction of "wireless transmitter", the claim language "pressure sensor unit integrated with a wireless transmitter, said pressure sensor

---

[1] Pages are bates stamped with designation CRAN-GREATCALLXXXXXXXX where previously served on Defendant by Plaintiff, and with designation GREATCALLXXXXXXX where previously served on Plaintiff by Defendant.
[2] The patent issued from U.S. Patent Application No. 13/181,467 ("Application").
[3] References made by Plaintiff to specific lines of text of Doc. No. 21-7 shall follow the following format: page number(s) : column number(s) : line number(s).
[4] A true and correct copy of the prosecution history of the Application was previously filed with the Court in Doc. No. 31-6.

unit configured to generate a pressure input signal" means: *a unit, which is capable of generating a pressure input signal based on or in response to an applied pressure, is integrated with a device capable of wirelessly transmitting information, using a preselected wireless transmission protocol, through a wireless medium*.  With respect to "pressure sensor unit", Defendant argues that 35 U.S.C. §112, ¶6 must apply "because 'pressure sensor unit' is a nonce term that implies no structure, and the claim itself is written in the format of a traditional means-plus-function claim …."  Doc. No. 30, page 11, lines 1-2.  Plaintiff hereby responds:

**First**, in support of its premise that "pressure sensor unit" is a nonce term that implies no structure, Defendant cites to MPEP §2181(I)(A), which lists the language "unit for" as being among "a list of non-structural generic placeholders that ***may*** invoke 35 U.S.C. 112(f) or pre-AIA 35 U.S.C. 112, paragraph 6".  MPEP §2181(I)(A) (emphasis added).  Defendant next references this Court's decision in *IPS Group, Inc. v. CivicSmart, Inc.*, No. 17-cv-632-CAB-(MDD), 2018 WL 6567843, *2 (S.D. Cal. Dec. 13, 2018) (J. Bencivengo), wherein the Court determined "that 'control unit' is a non-structural placeholder identified only by its function".  However, in *IPS Group*, this Court specifically found that "[a]dding 'control' as a modifier of 'unit' provides no further structural disclosure."  *Id.*  This case is clearly distinguishable, as the language "pressure sensor" certainly modifies the word "unit" as indicating the implementation of a known "pressure sensor.

Defendant even admits that the "specification is ***clear***" that the term "pressure sensor unit" contains "a pressure sensor".[5]  Doc. No. 30, page 12, lines 1-2 (emphasis added).  Thus, the specification is apparently so incredibly clear that even Defendant can easily determine that the "pressure sensor unit" implements a pressure sensor.  In view of this admission, "[i]t is clear that [Defendant's] concern

---

[5] Plaintiff does not disagree that the "pressure sensor unit", as recited in Claims 1 and 17, includes ***a*** pressure sensor.  However, "pressure sensor unit" cannot be construed as requiring more than one pressure sensor, as an additional "one or more pressure sensors" are not required until dependent Claim 5.

with the claim language is its potential scope and breadth, or a lack of enablement or written description, not its structure." *Immunex Corporation v. Sanofi et al.*, No. CV 17-02613 SJO (PLAx), 2018 WL 6252460, *10 (C.D. Cal. Aug. 24, 2018). In *Immunex*, the Central District of California recognized that the defendants were trying to improperly argue claim invalidity, at the claim construction stage, based on a theory of a lack of enablement or written description. Such is the case here, despite the specification providing, *inter alia*, a detailed description (with reference to Figure 36B) of an embodiment that shows how a source 3610 can be integrated with a wireless transmitter 3680. *See* Doc. No. 21-7 at 52:22:61 through 53:23:9.

Indeed, the evidence or record shows that a person having ordinary skill in the art (PHOSITA) would know that a pressure sensor is capable of causing a signal to be generated. *See* Doc. No. 31-7 at page 3 (GREATCALL0000290) (wherein *Defendant's own definition* of "sensor" states, "The generic name for a device that senses either the absolute value or a change in a physical quantity such as ... pressure ... and converts that change into a useful input signal ...."). Thus, a PHOSITA would easily ascertain that source 3610 may be a pressure sensor of the "pressure sensor unit", particularly because the signal output by this pressure sensor could be routed through first transmission line 3640 to wireless transmitter 3680. *See* Doc. No. 21-7 at 52:22:61 through 53:23:9 and at page 40 (Figure 36B).

**Second**, Defendant states "the claim itself is written in the format of a traditional means-plus-function claim: *i.e.*, it recites a means to "generate a pressure input signal." Doc. No. 30, page 11, lines 1-2 (emphasis in original). The claim term "pressure sensor unit" obviously is not written in a traditional mean-plus-function format, as the term "means" is not utilized, thereby creating a rebuttable presumption *against* the application of §112, ¶6. *See Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1007 (Fed. Cir. 2018), *citing Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015). Additionally, the Federal Circuit recently clarified that "the mere fact that the disputed limitations incorporate functional language does not automatically convert the words into

means for performing such functions." *Zeroclick*, 891 F.3d at 1008 (citation omitted). Plaintiff submits that Defendant has failed to meet its burden of rebutting the presumption against the application of §112, ¶6.

While the "pressure sensor unit" is "configured to generate a pressure input signal", the term "pressure sensor unit" undoubtedly indicates to a PHOSITA a sufficient structure for performing this operation. *See Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1373 (Fed. Cir. 2003):

> While we do not find it necessary to hold that the term 'circuit' by itself always connotes sufficient structure, the term 'circuit' with an appropriate identifier such as 'interface', 'programming', and 'logic,' certainly identifies some structural meaning **to one of ordinary skill in the art**.

*See also Intel Corp. v. VIA Techs.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003) (holding that generic "core logic" was adequate corresponding structure for a claimed function although no specific circuitry was disclosed to show how the "core logic" was modified). Here, the independent claims, the specification, the prosecution history as well as the extrinsic evidence of record all add additional structural context such that "pressure sensor unit" has sufficient structural meaning.

## 2. defense unit

The term "defense unit" is repeatedly described in the specification as being *a unit that is capable of initiating a defense event based on an input*. *See, e.g.,* Doc. No. 21-7 at 44:6:10-13 (with reference to Figure 1A). *See also, e.g.,* Doc. No. 21-7 at 53:24:61-63 ("Concept 1 … a defense unit configured to initiate a defense event in response to an input"). With reference to Figure 1A, where defense unit 140 is illustrated for the very first time, defense unit 140 is not shown as including one or more projector units, one or more conductive energy devices, both a projector and a conductive energy device, or a container containing a substance. Rather, defense unit 140 is shown as being coupled with material 120 while receiving an input 150, and the specification then describes defense unit 140 as follows: "a defense unit 140 coupled or associated with material 120 and

positioned to initiate a defense event in response to an input 150." Doc. No. 21-7 at 44:6:10-13. The specification then goes on to state:

> Such a defense event *may* include, *for example*, (1) spraying a substance (e.g., a lachrymatory agent or pepper spray), (2) generating a voltage differential across two electrodes of a stun gun, (3) projecting a projectile (e.g., a rubber bullet), (4) <u>sounding an alarm</u>, (5) <u>capturing information pertaining to the event</u>, and/***or*** (6) <u>routing an amount of captured information to a preselected entity</u> (e.g., a law enforcement agency). However, ***other defense events may also be implemented.***

Doc. No. 21-7 at 44:6:13-21 (emphasis added). Thus, Defendant's proposal improperly imports discrete structures that are ***never required*** by the specification.[6]

Additionally, Defendant's proposal, which includes a shortened list of example structures capable of initiating merely a few example defense events, very conspicuously omits the disclosed structures capable of "(4) sounding an alarm, (5) capturing information pertaining to the event, and/***or*** (6) ***routing an amount of captured information to a preselected entity*** (e.g., a law enforcement agency)." Doc. No. 21-7 at 44:6:18-20 (emphasis added). For example, Figure 37 of the patent-in-suit illustrates an example computer system (computer system 3700) that may be implemented to carry out various operations discussed in the specification, such as routing (e.g., wirelessly routing) an amount of captured information to a preselected entity. *See, e.g.,* Doc. No. 21-7 at 53:23:57-67. Defendant's omission of such a computer system from its shortened list is a transparent attempt to improperly narrow the term "defense unit" in order to bolster its defense of non-infringement with respect to the smartphones that it routinely advertises and sells in the United States and that are certainly capable of wirelessly routing captured information to a preselected entity. Indeed, the First Amended Complaint states:

> [T]he Smartphone and the Lively Wearable Smartphone Application are configured to initiate a defense event (e.g., initiating an emergency call to one of the Urgent Response Agents at the Urgent Response Center) based on

---

[6] While a "wireless receiver" is also not required by the specification, Claims 1 and 17 were amended during prosecution to recite this feature.

the signal generated when the user pushes the Urgent Response Button. Doc. No. 21 at ¶109.

Finally, although the specification does describe multiple ***example*** structures for a "defense unit" (*see, e.g.,* Doc. No. 21-7 at pages 6-10 (Figures 3A-7) and at page 41 (Figure 37)), this term cannot now be narrowed to one of those example structures. *See, e.g., Phillips*, 415 F.3d at 1323 ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). *See also, e.g., Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361, 1367-1368 (Fed. Cir. 2005) (reversing and remanding the district court's claim construction that unduly limited a claim term to a preferred embodiment); *Am. Permahedge, Inc. v. Barcana, Inc.*, 105 F.3d 1441, 1444 (Fed. Cir. 1997) ("Claims, not the specification embodiments, define the scope of the protection."); *Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 865 (Fed. Cir. 1988) ("References to a preferred embodiment, such as those often present in a specification, are not claim limitations."). Plaintiff respectfully submits that this is especially true in the wake of *Zeroclick*, where the Federal Circuit recently took steps to reign in the over-application of §112, ¶6 by U.S. district courts, and particularly in a case such as this where multiple ***alternative example structures*** have been disclosed, yet Defendant has proposed a shortened list of disclosed structures that supports its non-infringement position while omitting other disclosed structures that very clearly support Plaintiff's case.

### 3.    defense event

Plaintiff has already explained that the specification supports the construction of "defense event" to be: *an event initiated to carry out a defensive action for the overall protection of life and limb, wherein said event may or may not involve the use of force*. For at least the same rationale presented in Doc. No. 31, Plaintiff hereby rebuts the notion that this proposed construction is unsupported by the written description. Additionally, although Defendant argues that Plaintiff's

proposed construction of "defense event" is unreasonably broad and ambiguous, the evidence or record demonstrates that the word "defense" has a lengthy history of use in the English language that would be well understood by a PHOSITA. *See, e.g.,* Doc. No. 31-1 (CRAN-GREATCALL00000802) (first definition of "defense": "the act or power of defending, or guarding against attack, harm, or danger"). Plaintiff's proposed construction comports with this long-standing use of the word "defense". Moreover, a claim construction is not *unreasonably* broad because it is not as narrow as a trespasser would like it to be; to hold otherwise would be to frustrate the very purpose of U.S. Const. art. I, §8 cl. 8 as well as to call into question the rationale for the existence of property boundaries in the U.S.

Defendant also argues that "[b]y providing illustrative examples of what constitutes a defense event, Plaintiff has acted as its own lexicographer and cannot now shift the sands on patent scope in the context of claim construction." Doc. No. 30, page 23, lines 8-10. First, Plaintiff is a limited liability company that was formed in the State of Nevada in the year 2015; Plaintiff did not exist when the Application was drafted (and subsequently prosecuted). Second, and **much** more importantly, Plaintiff rejects the notion that a patent that discloses enabling examples is necessarily limited by those discrete examples. That is not the law in the United States, as the Federal Circuit has repeatedly made clear. Indeed, while it is proper to construe a claim in light of the specification, the Federal Circuit has long recognized the canon of ***not importing*** the limitations of the specification or the preferred embodiment into a claim. *See, e.g., Callicrate*, 427 F.3d at 1367-1368 (reversing and remanding the district court's claim construction that unduly limited a claim term to a preferred embodiment); *Am. Permahedge*, 105 F.3d at 1444 ("Claims, not the specification embodiments, define the scope of the protection."); *Laitram*, 863 F.2d at 865 ("References to a preferred embodiment, such as those often present in a specification, are not claim limitations."). As such, it is Plaintiff's proposed construction, and not Defendant's, that comports with the

specification, particularly since the specification explicitly states that the enumerated defense events are simply examples while further clarifying that "*other defense events* may also be implemented". Doc. No. 21-7 at 44:6:21 (emphasis added).

Moreover, Defendant states that "[a]ll of these exemplary embodiments, however, also include a projectile or spray unit" (Doc. No. 30, page 24, line 21 – page 25, line 1, *citing* Figures 24, 25A, 25B, 26 and 27A of the patent-in-suit), but it should be clear from the discussion of "defense unit" herein that the specification does *not require* the implementation of a projectile or spray unit. With specific reference to Figures 24 and 26, a projector unit is illustrated merely as an *example* of a "defense unit"; a different structure for a "defense unit" could instead be implemented. Indeed, nowhere in the detailed description of Figures 24 and 26 is a projector unit ever even mentioned (or ever indicated to in any way be necessary to the implementation of audio input unit 2410 or image input unit 2610). To this point, an output of a projector unit is never shown as being input into either of audio input unit 2410 or image input unit 2610, and outputs of audio input unit 2410 and image input unit 2610 are never shown as being input into a projector unit. To conclude that a projector unit is in some way necessary to the implementation of either audio input unit 2410 or image input unit 2610 would be illogical. Furthermore, Figures 25A, 25B and 27A are merely example logic systems that *could* be implemented, but are certainly not required to be. It is notable for our purposes, however, that the specification describes each of audio input unit 2410 or image input unit 2610 as themselves being capable of "initiat[ing] a defense event". *See* Doc. No. 21-7 at 50:17:4-16 and at 50:17:38-49.

Finally, Defendant argues that Plaintiff's proposed construction could encompass complete inaction. However, Plaintiff's proposed construction clearly states, "an event initiated to carry out a defensive *action* for the overall protection of life and limb, wherein *said event may or may not involve the use of force*".

This construction stipulates that the event is initiated to carry out an actual "action" (as opposed to inaction), while then qualifying that the event initiated to carry out such action may or may not involve the use of force, which is well-supported. Indeed, sounding an alarm, capturing information pertaining to the event, and routing an amount of captured information (*see, e.g.,* Doc. No. 21-7 at 44:6:13-20) are all examples of defense events that do not involve the use of force, yet each of these events are quite obviously initiated to carry out a defensive ***action***.

### 4. manual selector

The specification defines "manual selector" as follows: "a manual selector 1910 coupled or associated with defense unit 140 and positioned to generate a manual execution signal 1920 in response to a selection 1930 of manual selector 1910." Doc. No. 21-7 at 48:14:49-52. Plaintiff has already addressed the fact that ***the specification discloses multiple possible structures for a "manual selector".*** *See* Doc. No. 31 at page 27, line 10 – page 29, line 1. By way of example, and with reference to Doc. No. 21-7 at 53:24:6-13, the specification teaches that a cursor control device 3770 may be integrated with a computer system (e.g., computer system 3700). "For example, cursor control device 3770 may be implemented using a mouse, a track-ball, a track-pad, an optical tracking device, or a touch screen." *Id.* at 53:24:10-13. Each of these five (5) example devices were previously ***well-known***, and a PHOSITA would understand that the purpose of integrating such a device with a computer system would be to enable said device to generate an input signal in response to a user utilizing that device to manually input a selection, particularly being that the specification states, "optional cursor control device 3770 is configured to communicate user input information and command selections to processor 3720." *Id.* at 53:24:8-10. The specification also describes alphanumeric input device 3760 (*id.* at 53:24:6-18), which is yet another example of a structure for a "manual selector", and a PHOSITA would understand that a well-known electronic keyboard would be an example of such a device.

Thus, Plaintiff finds Defendant's notion that the specification discloses only one possible structure for a "manual selector" to be a transparent attempt to strengthen its non-infringement position with respect to its smartphones, which are integrated with touchscreens. Additionally, Defendant's attack on Plaintiff's proposed construction of "manual selector" by alleging a lack of clarity with respect to the difference between "manual execution signal" and "automatic execution signal" is simply Defendant grasping at straws. The feature "manual execution signal" is only recited in Claims 8 and 17, and the feature "automatic execution signal" is only recited in Claims 5-7. Neither of Claims 8 or 17 depend from any of Claims 5-7. None of Claims 5-7 depend from either of Claims 8 or 17. There is no need for the Court to construe a distinction between these two signals where no lack of clarity exists in even a single claim, asserted or otherwise.

### 5. self-defense system

Defendant argues that the claim preamble at issue "merely states, for example, the ***purpose or intended use*** of the invention" and therefore "the preamble is of ***no significance to claim construction*** …." Doc. No. 30, page 25, lines 21-22, *citing Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F. 3d 1298, 1305 (Fed. Cir. 1999) (citations omitted). If Defendant is correct, then the language "self-defense system" cannot now be used to construe other claim terms (e.g., "defense event" and "defense unit"), as "self-defense" would merely be a purpose or intended use having no significance to claim construction.

### 6. wireless transmitter, comparator, conductive energy device

With respect to the remaining terms, Plaintiff hereby references its positions in its Opening Claim Construction Brief [Doc. No. 31], but expressly reserves the right to further respond during the scheduled claim construction hearing.

## III.   CONCLUSION

For at least the foregoing reasons, it is hereby respectfully requested that the Court adopt Plaintiff's well-supported claim constructions.

Date: <u>April 30, 2019</u>          By:     <u>s/ Jerry A. Crandall</u>

Jerry A. Crandall (CSB No. 250192)
jac@crandalltech.com
CRANDALL TECHNOLOGIES LLC
1590 Heavenly View Trail
Reno, NV 89523

*Attorney for Plaintiff*
*Crandall Technologies LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 30, 2019, the foregoing document and all accompanying attachments were filed with the Clerk of the U.S. District Court for the Southern District of California, using the Court's Electronic Case Filing (ECF) system, in compliance with CivL.R. 5.4. The ECF system serves a "Notice of Electronic Filing" to all parties and counsel who have appeared in this action and who have consented under CivL.R. 5.4 to accept that Notice as service of this document.

Date: April 30, 2019      By:     s/ Jerry A. Crandall

Jerry A. Crandall (CSB No. 250192)
jac@crandalltech.com
CRANDALL TECHNOLOGIES LLC
1590 Heavenly View Trail
Reno, NV 89523

*Attorney for Plaintiff*
*Crandall Technologies LLC*