KILPATRICK TOWNSEND & STOCKTON LLP
MEGAN M. CHUNG (State Bar No. 232044)
mchung@kilpatricktownsend.com
JAMES J. MAUNE (State Bar No. 293923)
jmaune@kilpatricktownsend.com
12255 El Camino Real, Suite 250
San Diego, CA 92130
Telephone: 858 350 6100
Facsimile: 858 350 6111

Attorneys for Defendant
GREATCALL INC.

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRANDALL TECHNOLOGIES LLC, A NEVADA LIMITED LIABILITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>GREATCALL INC., A DELAWARE CORPORATION,<br><br>Defendant. | Civil Action No. 3:18-cv-01396-CAB-MDD<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF LIMITATION OF DAMAGES, NO WILLFUL INFRINGEMENT, NON-INFRINGEMENT AND INVALIDITY**<br><br>Hearing Date: January 3, 2020<br>Courtroom: 4C<br><br>Hon. Cathy Ann Bencivengo<br><br>PER CHAMBERS, NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT |



# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................1

II.   SUMMARY JUDGMENT IS PROPER WHEN THERE IS
INSUFFICIENT EVIDENCE TO SUPPORT
CRANDALL'S CLAIMS.........................................................................1

III.  BRIEF SUMMARY OF RELEVANT UNDISPUTED
FACTS.................................................................................................3

IV.  ARGUMENTS ......................................................................................6

     A.    Crandall Cannot Establish Facts to Recover Damages
           Prior to Actual Notice of Alleged Infringement on
           June 28, 2018 .................................................................................6

     B.    No Willful Infringement When There Is No
           Infringing Act Before This Action Or Egregious
           Conduct .........................................................................................6

     C.    Crandall Does Not Have Admissible Evidence to
           Support Any Damages ..................................................................8

     D.    Crandall Cannot Show Induced Infringement ...............................10

     E.    Crandall Cannot Show Contributory Infringement .......................11

     F.    Crandall Cannot Show Infringement That Would Not
           Also Render the '789 Patent Invalid...............................................12

           1.    Smartphone's Housing is Not A "Material
                 Sized To Conform to an Appendage" Required
                 in All Asserted Claims; Otherwise Claims are
                 Invalid ................................................................................16

           2.    Lively Wearable Device Is Not "Pressure
                 Sensor Unit".........................................................................18

           3.    Alternatively, Asserted Claims Are Invalid for
                  Lack of Written Description or Enablement ........................21

            4.    Crandall Cannot Establish "Defense Unit" ..........................21

           5.    Crandall Cannot Show GreatCall's
                 Smartphones Generate "voltage differential"
                 above 50kV ..........................................................................24

           6.    Crandall Cannot Show There is any "Manual
                 Selector" that Generates a "Manual Execution
                 Signal" ................................................................................25



# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
   No. 14-cv-6544 (KAM)(GRB), 2018 U.S. Dist. LEXIS 51444
   (E.D.N.Y. Mar. 27, 2018) ........................................................................... 6

*Amsted Indus. v. Buckeye Steel Castings Co.*,
   24 F.3d 178 (Fed. Cir. 1994) ..................................................................... 6

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................... 2

*Arthur A. Collins, Inc. v. N. Telecom Ltd.*,
   216 F.3d 1042 (Fed. Cir. 2000) ................................................................. 2

*Artic Cat Inc. v. Bombardier Rec. Prods.*,
   876 F.3d 1350 (Fed. Cir. 2017) ................................................................. 2

*In re Bill of Lading Transmission*,
   681 F.3d 1323 (Fed. Cir. 2012) ............................................................... 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................... 2

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*,
   145 F.3d 1303 (Fed. Cir. 1998) ................................................. 15, 22, 24

*Cybiotronics, Ltd. v. Golden Source Elecs., Ltd.*,
   130 F. Supp. 2d 1152 (C.D. Cal. 2001) ................................................... 10

*Driessen v. Sony Music Entm't*,
   640 F. App'x 892 (Fed. Cir. 2016) ............................................................ 2

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006) ......................................................... 10, 11

*Fujitsu Ltd.v . Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010) ............................................................... 11

*IP Innovation LLC v. Red Hat*,
   705 F. Supp. 2d 687 (E.D. Tex. 2010) ...................................................... 9



*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    134 S.Ct. 2111 (2014) .............................................................................. 10

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
    851 F.3d 1275 (Fed. Cir. 2017) ................................................................. 7

*Moore U.S.A., Inc. v. Standard Register Co.*,
    229 F.3d 1091 (Fed. Cir. 2000) ................................................................. 2

*NetFuel, Inc. v. Cisco Sys. Inc.*,
    No. 18-cv-02352-EJD, 2018 WL 4510737 (N.D. Cal. Sept. 18, 2018).................. 7

*PC Connector Soln's LLC v. Smartdisk Corp.*,
    406 F.3d 1359 (Fed. Cir. 2005) ............................................................... 12

*Peters v. Active Mfg. Co.*,
    129 U.S. 530 (1889) ............................................................................... 15

*Power Integrations v. Fairchild Semiconductor Int'l Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016) ............................................................... 10

*In re Seagate Tech., LLC*,
    497 F.3d 1360 (Fed. Cir. 2007) ................................................................. 7

*Simpson Performance Prod., Inc. v. Impact Racing, Inc.*,
    No. 17-cv-01706-BEN-MDD, 2018 WL 2229372 (S.D. Cal. May 16,
    2018)...................................................................................................... 7

*Slot Speaker Techs., Inc. v. Apple, Inc.*,
    No. 13-cv-01161-HSG, 2017 WL 4354999 (N.D. Cal. Sept. 29, 2017).................. 8

*Sonix Tech. Co. v. Yoshida*,
    No. 12-cv-380-CAB-DHB, 2014 WL 11899474 (S.D. Cal. Dec. 12,
    2014)..................................................................................................... 13

*Takeda Pharm. U.S.A., Inc. v. West-Ward Pharm. Corp.*,
    785 F.3d 625 (Fed. Cir. 2015) ................................................................. 10

*TechSearch LLC v. Intel Corp.*,
    286 F.3d 1360 (Fed. Cir. 2002) .......................................................... 12, 19

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012) ............................................................... 12



*Tronzo v. Biomet, Inc.*,
    156 F.3d 1154 (Fed. Cir. 1998) ................................................................. 18

*Unicom Monitoring, LLC v. Cencom, Inc. et al.*,
    Case 3:06-cv-01166-MLC-DEA, Doc. No. 134 ...................................... 8

*Wady v. Provident Life and Accident Ins. Co. of Am.*,
    216 F.Supp.2d 1060 (C.D. Cal. 2002) ...................................................... 8

*WBIP, LLC v. Kohler Co.*,
    829 F.3d 1317 (Fed. Cir. 2016) ........................................................... 2, 7

*Zelinski v. Brunswick Corp.*,
    185 F.3d 1311 (Fed. Cir. 1999) ................................................................ 2

**Statutes**

35 U.S.C. §112 ............................................................................................... 1, 2

35 U.S.C. § 271(b) ........................................................................................... 10

35 U.S.C. § 284 ............................................................................................. 2, 8

35 U.S.C. § 287 ............................................................................................. 2, 6

**Other Authorities**

Federal Rule of Civil Procedure Rule 26(a)(2) ............................................. 19

Federal Rule of Civil Procedure Rule 26(a)(2)(A) ......................................... 8

Federal Rule of Civil Procedure Rule 26(a)(2)(C) ....................................... 12

Federal Rule of Civil Procedure Rule 56 ......................................................... 2



DEFENDANT'S MEMO OF P&AS ISO MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-0139-CAB-MDD

## I.     INTRODUCTION

Plaintiff Crandall Technologies, LLC ("Crandall") contends that Defendant GreatCall, Inc. ("GreatCall") infringes U.S. Patent No. 8,854,789[1] (the '789 Patent) and seeks damages for this infringement for six years prior to filing this case, and also seeks enhanced damages for willfulness.

Crandall overreaches, however, with its theories, having neither legal basis nor evidence.  Crandall admits that it never gave actual notice of infringement to GreatCall until it formally served GreatCall on June 28, 2018, and that it never sold any products for marking purposes.  Thus, GreatCall moves for summary judgment of no damages prior to June 28, 2018, and no enhanced damages because GreatCall did not possess any pre-suit knowledge.

Moreover, GreatCall moves for summary judgment of no inducement or contributory infringement, because there is **no** evidence of any direct infringement by any party, a third-party being in fact induced, or that smartphones having predominantly infringing use.  Also, there can be no such indirect infringement prior to actual notice when knowledge of the patent is the predicate to pre-suit liability.

Finally, GreatCall moves for no infringement of the asserted claims, because Crandall cannot demonstrate that each and every limitation of the asserted claims is met.  Crandall has not disclosed any actual factual evidence of infringement literally or by doctrine of equivalents or any expert opinion.  Further, Crandall's theories for infringement do not abide by the Court's construction.  If there is a possibility of infringement, then the same claim terms are invalid for lack of written description or enablement under 35 U.S.C. §112.

## II.    SUMMARY JUDGMENT IS PROPER IF NO GENUINE DISPUTE

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any

---

[1] Exhibit A to the accompanying Declaration of James Maune ("Maune Decl."). Unless indicated otherwise, exhibits referenced here are attached to this declaration.

material fact and the movant is entitled to judgment as a matter of law." "One of the principal purposes of summary judgment rule is to isolate and dispose of factually unsupported claims or defenses," and Rule 56 must be interpreted and applied "in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986).

Crandall bears the burden of persuasion at trial on infringement, willful infringement, and damages. *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1316 (Fed. Cir. 1999)(patentee must prove accused device embodies every limitation in the claim); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1339-40 (Fed. Cir. 2016) ("[A] party seeking enhanced damages under § 284 bears the burden of proof…"); *Artic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1367 (Fed. Cir. 2017) (patent owner bears burden of proof on § 287 damages). On these issues, GreatCall's burden on summary judgment "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Then, the burden shifts to Crandall to present admissible evidence that could permit the trier to find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Crandall cannot "overcome a grant of summary judgment by merely offering conclusory statements." *Moore U.S.A., Inc. v. Standard Register Co.,* 229 F.3d 1091, 1112 (Fed. Cir. 2000); *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000) ("[I]t is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue").

While GreatCall bears the burden of persuasion on invalidity, summary judgment under 35 U.S.C. § 112 for lack of written description is appropriate where the patentee is unable to identify adequate supporting description in the patent specification. *Driessen v. Sony Music Entm't*, 640 F. App'x 892, 896 (Fed. Cir. 2016), *cert. Denied*, 137 S. Ct. 129, 196 (2016) (affirming grant of summary judgment of invalidity for lack of written description when the claim terms appear in



DEFENDANT'S MEMO OF P&AS ISO MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-0139-CAB-MDD

the specification because "[t]he mere presence of these words in isolation does not suffice to show that the 'patentee had possession of' the …elements of the claimed invention at the time of the application").

### III.   BRIEF SUMMARY OF RELEVANT UNDISPUTED FACTS

Crandall filed this lawsuit on June 25, 2018, alleging initially that GreatCall's Lively Wearable Device, the associated 5Star Service, and Lively Wearable Application combined with third-party user's smartphones directly or indirect infringes the '789 Patent.  Doc. No. 17-30.  Crandall then amended the complaint to allege that GreatCall's aforementioned products combined with either (1) GreatCall's Touch 3 or Smart smartphones *or* (2) third-party user's non-GreatCall smartphones infringe.  Doc. No. 21.  Crandall also added a willful infringement claim.  *See id.*  The Lively Wearable Device (depicted below) can be



**Lively Wearable™ Device** – This is your one-button device with built-in accelerometer for tracking steps. It can be worn around your wrist or neck using the included accessories.



Gray

White

put into a wrist band or a lanyard.  Doc. No. 21 at 1164 (photo) and 1203 (user guide).  To activate the Lively Wearable Device, a person has to (1) activate the device on GreatCall's website and set up 5Star Service that allows access to agents who are certified for emergency procedures, (2) download and install the Lively Wearable App on his or her smartphone, (3) set up the Lively Wearable App, which includes pairing the App to services or functions on the smartphone such as Bluetooth receiver and location services, and (4) pair the Lively Wearable App with the Lively Wearable Device.  *Id.* at 1208-1215 and 1243.  The third-party user must to do all this for the Lively Wearable Device to be successfully set up.  *Id.* at 1243.

Crandall has continued to allege infringement of claims 1-5, 8-9, 12, 15 and



17 even after the Court's claim construction rulings on May 28, 2019.  *See* Exs. B

and C.  Claims 1 and 17 are the independent claims that are similar with claim 17

providing an additional limitation of a manual selector:

> 17. A self-defense system comprising:
> a material sized to conform to an appendage;
> a pressure sensor unit integrated with a wireless transmitter, said
> pressure sensor unit configured to generate a pressure input signal;
> a manual selector configured to generate a manual execution signal;
> and
> a defense unit coupled with said material and communicatively
> associated with said manual selector, said defense unit integrated
> with a wireless receiver configured to wirelessly receive said
> pressure input signal from said wireless transmitter, and said defense
> unit configured to initiate a defense event in response to either of
> said pressure input and manual execution signals

Ex. A, Cl. 17.  Crandall alleges that the hard outer housing of any smartphone is the

"material sized to conform to an appendage."  Ex. C at 3-5.  Crandall also alleges

that GreatCall's Lively Wearable Device is "analogous" to the "pressure sensor unit

integrated with a wireless transmitter," but does not identify what is the "pressure

input signal."  *Id.* at 7, 35.  Crandall further alleges that any smartphones' power

button or selector button or an unidentified "Manual Selector Option" on the

touchscreen is the "manual selector" even though the Court limited "manual

selector" to the push button structure disclosed in the '789 Patent.  *Id.* at 35-37.

Crandall never identifies how these components generate the "manual execution

signal."  *Id.*  Further, Crandall contends that smartphones have "defense units,"

because they have a microphone, a digital camera, a digital recording device, a GPS,

an audio speaker, and a transmitter to routed captured information but ignores and

does not discuss how such components in the smartphone have identical function

and equivalent structures disclosed in the '789 Patent that was required by the

Court's 112(6) construction of "defense unit."  Lastly, Crandall alleges there is the

"defense event" of (1) the microphone of the Smartphone captures information, (2)



DEFENDANT'S MEMO OF P&AS ISO MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-0139-CAB-MDD

the GPS of the Smartphone captures information, and (3) the transmitter of the smartphone routes, for example, the aforementioned captured audio and GPS data to the 5Star Service. *Id.* at p. 40.

Of the products accused in its complaints and infringement contentions, Crandall, however, has admitted that it has never purchased and analyzed GreatCall's Touch or Smart phones. Ex. D at 53:11-56:22.  While it purchased the Lively Wearable Device, it has never disassembled the device or signed up for the 5Star Service or even downloaded the Lively Wearable App that Crandall has alleged must be used with the Lively Wearable Device for its allegations of infringement. *Id.* at 58:8-24, 60:4-8; Ex. B at 9-16; Ex. C; Doc. No. 21 at 1021-1031 (¶¶ 10-54).  Crandall has never downloaded the Lively Wearable App to its own founder's smartphone. Ex. D at 60:17-25.  Crandall similarly has never requested to inspect GreatCall's accused devices.  Maune Decl. ¶ 8.  Neither has Crandall requested information from any third parties—including any manufacturers of the smartphones or alleged users of the combination of devices accused of infringement—during discovery. *Id*.  Nor has Crandall retained any independent expert. *Id.* ¶ 10.

Furthermore, Crandall has admitted that the first date of actual notice of infringement to GreatCall was on June 28, 2018, when the original complaint was served on GreatCall. Ex. D at 118:20-119:10.  Crandall itself never sold any products for constructive notice. *Id.* at 42:24-43:2.

Fact discovery and opening expert report deadlines have passed.  On October 21, 2019—deadline for opening expert reports—Crandall did not serve any expert reports in support of its various infringement theories or for damages for which Crandall bears the burden of proof.  Nor did Crandall identify any non-expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2)(A) & (C).  GreatCall served its invalidity expert report on October 21, 2019.

Additional facts that are relevant to this motion are explained in detail in the



DEFENDANT'S MEMO OF P&AS ISO MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-0139-CAB-MDD

relevant argument sections below.

## IV.   ARGUMENTS

### A.   Crandall Cannot Establish Facts to Recover Damages Prior to Actual Notice of Alleged Infringement on June 28, 2018

In order to obtain damages prior to giving GreatCall actual notice of the claimed infringement, Crandall must prove compliance with the provisions of 35 U.S.C. § 287.  Crandall does not have any evidence of marking or actual notice of infringement before June 28, 2018.  Accordingly, Crandall is limited to recovery of damages after June 28, 2018.

Crandall admitted it has never produced any prototypes, let alone sellable products.  Ex. D at 42:24-6.  Thus, there is no marking of any patented articles subject to § 287.  June 13, 2018 is the date of the first letter to GreatCall; but that letter does not allege any infringement by Greatcall's products and instead asks whether GreatCall "wishes to use" or "wish to license" Crandall's technologies.  Ex. E at 1.  Crandall admitted that the first notice of any infringement to GreatCall was on June 28, 2018, when it formally served the original complaint.  Ex. D at 118:20-119:10.

"Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).  There was no actual notice of infringement until service of the original complaint in this case.  Accordingly, the Court should grant partial summary judgment barring Crandall from recovering any damages prior to June 25, 2018. *See Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14-cv-6544 (KAM)(GRB), 2018 U.S. Dist. LEXIS 51444, at *19-20 (E.D.N.Y. Mar. 27, 2018).

### B.   No Willful Infringement When There Is No Infringing Act Before This Action Or Egregious Conduct

This Court may grant summary judgment on willful infringement where the



record would not support a finding of culpability under the relevant legal standards. There can be no finding of willfulness as a matter of law, because Crandall cannot identify any acts of willful infringement by GreatCall before it filed this action. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) (en banc), *overruled on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935-36 ("[W]illful infringement in the main must find its basis in prelitigation conduct…"); *NetFuel, Inc. v. Cisco Sys. Inc.*, No. 18-cv-02352-EJD, 2018 WL 4510737, at *3 (N.D. Cal. Sept. 18, 2018) ("Plaintiff has not established Defendant knew of the Patents-in-suit before this suit was filed. 'The absence of any allegation of pre-filing knowledge of the patents is fatal to [plaintiff's] willful infringement claims.'"). "The relevant date for determining which conduct is pre-suit [for willfulness] is the date of the patentee's affirmative allegation of infringement…." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2017). For this reason, absent pre-suit knowledge there is no basis on which GreatCall's conduct can be considered willful infringement of any patent. *WBIP, LLC v. Khler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages"). However, even mere knowledge of just the patent and nothing more is insufficient to establish willfulness and enhanced damages. *Halo*, 136 S.Ct. at 1936 ("[T]he Court's reference to 'willful misconduct' does not mean that a court may award enhanced damages simply because the evidence shows that the infringer knew about the patent and nothing more.")(Breyer, J., concurring); *see also Simpson Performance Prod., Inc. v. Impact Racing, Inc.*, No. 17-cv-01706-BEN-MDD, 2018 WL 2229372, at *4-5 (S.D. Cal. May 16, 2018)(requiring more than mere knowledge).

Crandall has no evidence of any specific facts about GreatCall's subjective intent or egregious conduct to make a claim of willfulness plausible. As stated above, Crandall admitted that GreatCall was not notified of infringement until



service of the complaint on June 28, 2018.  Any continued sales[2] of GreatCall's products after the lawsuit cannot provide a basis for a finding of willful infringement.  *Slot Speaker Techs., Inc. v. Apple, Inc.*, No. 13-cv-01161-HSG, 2017 WL 4354999, at*2 (N.D. Cal. Sept. 29, 2017)(holding that Defendant's ongoing, post-complaint manufacturing and sales "on their own" are not probative for willfulness because they are "equally consistent with a defendant who subjectively believes the plaintiff's patent infringement action has no merit.").  Accordingly, there is no genuine issue of material fact and summary judgment of no willful infringement and enhanced damages under 35 U.S.C. § 284 should be granted.

## C.    Crandall Does Not Have Admissible Evidence to Support Any Damages

Crandall seeks damages based solely on reasonable royalty.  Ex. D at 120:2-9. Crandall did not provide an expert report in support of its damages theories (or for any issue in this case).  Maune. Decl. ¶ 10.  It did not also provide a Rule 26(a)(2)(A) statement identifying the basis for opinions by a non-independent expert.  *Id.*  District Court have granted summary judgment on monetary damages in cases as here where Plaintiff fails to submit competent evidence.  *See Unicom Monitoring, LLC v. Cencom, Inc. et al.,* Case 3:06-cv-01166-MLC-DEA, Doc. No. 134 at 21-22 (holding that allowing lay witness testimony regarding damages was improper expert testimony).  *See* Ex. K.  Crandall testified through its designee that its basis for royalty are two documents printed from the internet.  Ex. D at 121:18-25, 127:13-24.  However, Crandall did not know the publication date, methodology used, the delineation of the categories or even some of the information in the document.  *Id.* at 122:1-128:2.  These unauthenticated, internet documents should be excluded.  *See, e.g.*, *Wady v. Provident Life and Accident Ins. Co. of Am.*, 216

---

[2] As Plaintiff acknowledged in its First Amended Complaint, the Lively Wearable Devices were "temporarily sold out" at least as of March 4, 2019.  Doc. 21 at 1072 (¶ 194).



DEFENDANT'S MEMO OF P&AS ISO MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-0139-CAB-MDD

F.Supp.2d 1060 (C.D. Cal. 2002) (excluding internet evidence on a summary judgment motion for these reasons).

Crandall may attempt to have its sole officer and inventor (and attorney) Mr. Jerry Crandall submit a declaration to support its theories.  However, Mr. Crandall is not qualified to testify on reasonable royalty.  He testified that he has a bachelor's in electrical engineering from University of California, Riverside and then went to Santa Clara University to obtain a law degree. Ex. F at 7:10-8:12, 10:14-16, 10:20-11:4.  He never took any classes in accounting or economics in college, he never worked in accounting or economics and has only worked at law firms or "other employment that's unrelated and irrelevant to this action." *Id.* at 8:13-9:3, 11:11-13:7.  Mr. Crandall never worked as an engineer after graduating from college. *Id.* at 13:18-20.  While interning during college, he worked on circuits but not any chipsets. *Id.* at 13:21-14:5.  Prior to filing the '789 Patent, he never did any design work or testing on pressure sensors, wireless transmitters or receivers, Bluetooth, microphone, GPS systems, cellular phones, smartphones, or medical alert devices. *Id.* at 15:12-19:1.  Accordingly, Mr. Crandall does not have sound economic basis or even technical basis on the claimed features or the accused products[3] to opine on reasonable royalty, including the *Georgia-Pacific* factors and any nexus of patented features to damages.  Any declaration from him supporting Crandall's damages theories should be excluded. *See IP Innovation LLC v. Red Hat*, 705 F. Supp. 2d 687, 689, 691 (E.D. Tex. 2010)(excluding expert testimony that was determined not based on trustworthy or sound evidence of both the royalty base and the royalty rate and relying on publication rates for categories that were broader than the patented feature in the case).

---

[3] For these reasons, Mr. Crandall may not also have the technical expertise to opine on technical components, especially as it relates to any equivalents theory. GreatCall reserves right to move to exclude any declaration from Mr. Crandall in opposing summary judgment.



DEFENDANT'S MEMO OF P&AS ISO MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-0139-CAB-MDD

### D.   Crandall Cannot Show Induced Infringement

To establish induced infringement, Crandall must establish that GreatCall had "knowledge that the induced acts constitute patent infringement." *In re Bill of Lading Transmission*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).  A predicate liability for inducement is showing that a third-party committed the entire act of direct infringement.  *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S.Ct. 2111, 2117 (2014).  In addition, mere knowledge of the '789 Patent by GreatCall is not enough; specific intent and actions to induce infringement must be proven.  *Takeda Pharm. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015).  Inducement further requires "successful communication between the alleged inducer and the third-party direct infringer" and "actual inducement."  *Power Integrations v. Fairchild Semiconductor Int'l Inc.*, 843 F.3d 1315, 1331-32 (Fed. Cir. 2016).  Crandall cannot establish any of these prongs.

First, Crandall again overreaches in seeking induced infringement for the time period before GreatCall obtained knowledge of the '789 patent.  Thus, on each of the asserted claims, the Court should grant summary judgment of no pre-suit inducement.  *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc); *Cybiotronics, Ltd. v. Golden Source Elecs., Ltd.*, 130 F. Supp. 2d 1152, 1164-66 (C.D. Cal. 2001)(finding "in the absence of knowledge of the patents-in-suit, [defendant] could not possibly have had the specific intent to induce infringement of those patents" and thus "Plaintiff is barred as a matter of law from asserting liability under 35 U.S.C. § 271(b)").

Second, more importantly, Crandall has no evidence of a third-party direct infringer[4] or any "successful communication" between GreatCall and that unknown direct infringer.  Crandall did not conduct any third-party discovery or produce any documents that identifies a third-party direct infringer.  Maune Decl. ¶ 7.  Crandall

---

[4] In addition to the third-party infringer, GreatCall's products do not infringe the asserted claims as discussed below.  Simply, there is no direct infringement.

DEFENDANT'S MEMO OF P&AS ISO MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-0139-CAB-MDD

itself has not even tested all of the accused devices in combination as alleged in its Amended Infringement Contentions.  Ex. D at 53:11-56:22, 58:8-24, 60:4-8, 60:17-25 (never disassembling Lively Wearable Device, never connecting Lively Wearable Device to 5Star Service, never signing up for 5Star Service, never downloading the Lively Wearable App on its officer's smartphone, never purchasing GreatCall's phones).  Crandall did not serve any expert report identifying any evidence of third-party direct infringement or any communications between GreatCall and the unidentified third-party.  Maune Decl. ¶ 10.

Third, no evidence exists showing GreatCall possessed the requisite intent to induce infringement.  GreatCall lacked any intent to induce infringement after it became aware of this patent with the lawsuit, because it possessed a good faith belief that its products did not infringe the asserted claims.  *See DSU*, 471 F.3d at 1307 (finding a demonstrated belief of non-infringement sufficient to support a finding of no inducement).  Throughout this litigation, including at the ENE conference, GreatCall has maintained that it does not and cannot infringe and the patent is invalid if Plaintiff's theories were true.  For all these reasons, the Court should find that GreatCall did not induce infringement as a matter of law.

### E.    Crandall Cannot Show Contributory Infringement

In order to raise a triable issue of fact on contributory infringement, Crandall must establish that (1) a third-party directly infringed the asserted claims after GreatCall had knowledge of the patent; (2) the accused component supplied by GreatCall has no substantial non-infringing uses; and (3) the infringing component is a material part of the invention.  *See Fujitsu Ltd. v . Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).  As discussed above, Crandall has no evidence of a third-party direct infringer.  That alone warrants summary judgment.  *Id.* at 1326.  Any liability before GreatCall had knowledge of the '789 patent is also precluded as a matter of law.  *Id.*  Crandall bears the burden but cannot show that GreatCall's 5Star Service, Lively Wearable App, or GreatCall's phones or others' phones lack



substantial non-infringing uses.  *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1362-63 (Fed. Cir. 2012) (affirming summary judgment of no contributory infringement where patentee failed to present expert testimony in support).  Crandall served no opening expert report or any Rule 26(a)(2)(C) statement.  Crandall's founder and sole employee Mr. Jerry Crandall is not qualified to testify or opine on these products when he testified that he did not sign up for 5Star Service, download the Lively Wearable App, or even worked on smartphones.  Ex. D at 58:2-61:15.  Crandall cannot dispute the fact:  that alone, each of the Lively Wearable App, 5Star Services, and all the smartphones models cannot infringe the '789 Patent.  For this reason, Crandall alleges a combination of devices to support his claims of infringement.  Even the FAC makes it clear that the 5Star Service and Lively Wearable App can be used without the Lively Wearable Device by just dialing the 5* button on the Lively Wearable App or GreatCall's smartphones.  Doc. No. 21 at 1034 (¶ 62), 1256 (Ex. X, p. 4), 1199 (Ex. P, p. 2), 1209 (Ex. R, p. 7).  Any person who has used a smartphone knows about the many functions and uses of a smartphone (e.g., sending emails and texts, playing music or games), none of which require GreatCall's Lively Wearable Device or are within scope of the '789 Patent.  As such, each of these devices have significant and material functions that do not infringe the '789 Patent, and thus have substantial non-infringing use.  In sum, Crandall cannot, as a matter of law, establish contributory infringement, and the Court should grant summary judgment.

**F.    Crandall Cannot Show Infringement That Would Not Also Render the '789 Patent Invalid**

"Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents."  *PC Connector Soln's LLC v. Smartdisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005); *TechSearch LLC v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir.



DEFENDANT'S MEMO OF P&AS ISO MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-0139-CAB-MDD

2002) (summary judgment of non-infringement is appropriate when the patent owner's proof is deficient).  "The party opposing summary judgment must present more than bare assertions, conclusory allegations or suspicions." *Sonix Tech. Co. v. Yoshida,* No. 12-cv-380-CAB-DHB, 2014 WL 11899474, at *4 (S.D. Cal. Dec. 12, 2014)(granting summary judgment of non-infringement in part because patent owner only provided "conclusory statements" and assumptions without actual evidentiary support).

As alluded above, Crandall only has conclusory statements and assumptions, sometimes that require a person of ordinary skill in the art ("POSITA") to re-write the patent specification to understand the '789 Patent to mean something other than what it states.  The '789 Patent clearly states the problem in the prior art that is trying to overcome:

> Pursuant to an exemplary scenario, a person, such as a jogger, notices a dog running toward him in a menacing manner, as if the dog intends to attack. Upon seeing this, the person immediately raises his arms in front of his face in a natural, defensive posture due to an innate defensive reflex prompted by fear and adrenaline. The person's arms are now positioned between his face and torso and the attacking dog such that the person's vital organs are provided a degree of protection. When the dog reaches the person, the dog bites down on one of the person's arms, which is closer in proximity to the dog than the person's face and torso. The dog then pulls and tears at the person's arm, thus inflicting a significant degree of damage to the bitten limb.

> In one example, **this problem is remedied** when the user carries a pepper spray propulsion device. **However, in so much as the user must extend his arm toward the attacking dog when discharging the chemical agent, the user has consequently sacrificed his defensive posture and exposed his vital organs to harm.** If the user fails to spray the dog with the chemical agent in a manner that stops the attack, then the dog may latch on to the user's face or torso, thereby causing the user to suffer even more harm than in the previous example (whereby the user's natural, defensive posture was not sacrificed). Furthermore, **the user may not even have time to aim the device if the attack happens suddenly and the device is, for example, in the**



- 13 -

user's pocket.

**In an embodiment of the present technology, a self-defense system is provided that makes use of a person's natural, defensive posture when initiating a defense event.** Consider the example where an implemented self-defense system **includes a piece of material that wraps around a person's arm or hand such that the self-defense system may be comfortably worn when the user is jogging**. ….

**Furthermore, in so much as the device is worn on the user's arm, the user does not need to spend precious seconds during an attack removing the device from his pocket, nor does the user need to constantly carry the device in his hand when he is not being attacked. Rather, an embodiment provides that the device is comfortably worn on the user's arm, or on the back of the user's hand (e.g., opposite the palm region), such that the user's hands are free to engage in other activities, all while the device is constantly available to be implemented at a moment's notice when the user adopts the aforementioned natural, defensive posture.**

It is noted that the foregoing examples are provided for purposes of illustration, and that **the present technology may also be implemented in a similar manner**, both by law enforcement officers and civilian citizens, to fend off human attackers. **Indeed, the present technology has a significant degree of utility for law enforcement officers, who must have their hands free** to activate their primary weapons (e.g., their service firearms). In so much as **a number of the self-defense devices discussed herein may be comfortably mounted** on the officers' arms, these devices may function as effective back-up defense systems in close-quarter combat situations if the officers' primary weapons are lost, malfunction, or are otherwise inoperable or ineffective.

Ex. A at 4:42-5:43.  Thus, the person of ordinary skill in the art reading this understands the technology or the '789 Patent cures the problems of sacrificing his defense posture to obtain a portable, defensive weapon during an attack and *by having* a self-defense system that is worn or mounted on an appendage that is immediately available while not sacrificing the defensive posture and leaves the person's hands free to use for other activities. Ex. J ¶ 21.  Yet, as explained below,



- 14 -

1  Crandall ignores the POSITA and argues infringement theories without basis in the

2  specification and contradicts the purpose of the system claimed in the '789 Patent.

3        Moreover, Crandall's infringement theories if found valid are so overbroad

4  that it would render the asserted claims invalid as lacking written description,

5  lacking enablement, and anticipated or rendered obvious by the prior art.  Other than

6  the "pressure sensor unit" limitation, Crandall relies on inherent components and

7  functions apparently generic to smartphones(e.g., housing, power button, wireless

8  receivers, battery, microphone, et al.) to meet all of the other limitations.  It is

9  undisputed that smartphones pre-existed July 12, 2011 when the '789 Patent was

10  filed.  The inventor testified he was aware of smartphones and used one, a

11  Blackberry device before he filed the '789 Patent.  Ex. F at 19:8-20:3.  But he did

12  not mention smartphones anywhere in the '789 Patent (or disclose them to the

13  Patent Office during the prosecution of the '789 Patent).  The Federal Circuit

14  warned patent owners against such infringement theories when §112(6) and doctrine

15  of equivalent is alleged as here:  "There is no policy-based reason why a patentee

16  should get two bites at the apple.  If he or she could have included in the patent what

17  is not alleged to be equivalent, and did not, leading to a conclusion that an accused

18  device lacks an equivalent to the disclosed structure, why should the issue of

19  equivalence have to be litigated a second time?" *Chiuminatta Concrete Concepts,*

20  *Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1311 (Fed. Cir. 1998).  If Crandall's

21  broad reading could be true, then U.S. Publication 2004/0266390 ("Faucher")

22  discloses an emergency system including a portable push button device that

23  connects via Bluetooth to a mobile phone.  Faucher anticipates or renders obvious

24  with U.S. Patent 6,646,855 (Buening) every asserted claim.  Ex. I at ¶¶ 33-55, 84-

25  100 (Ex. F of Invalidity Report).  It is black letter law "that which infringes if later,

26  anticipates if earlier." *Peters v. Active Mfg. Co.*, 129 U.S. 530 (1889).

27  Consequently, the asserted claims will be invalid if infringement theories found

28  viable.



- 15 -

### 1.    Smartphone's Housing Is Not A "Material Sized To Conform to an Appendage"; Otherwise Claims Are Invalid

Both independent claims 1 and 17 require "a material sized to conform to an appendage," and thus all of the asserted claims that depend on claim 1 also require this "material" limitation.  The Court construed "sized to conform to an appendage" as sized to have the same shape, outline or contour of an appendage, which is the head, arm or leg (or part thereof) of the human body.  Doc. No. 35 at 2337 (¶ 7).  However, the Court did allow either party to request leave to file a proposed construction at a different time since this term was not included in the original ten terms to be construed.  *Id.*

Crandall alleges that the "outer material (e.g., a plastic cover) that houses that internal smartphone circuitry"—that is the housing that meets the limitation of "material sized to conform to an Appendage."[5]  Ex. C at 3.  GreatCall's rectangular smartphones are shown below (Doc. No. 21, Exs. AE, AK. AL):



| Touch 3 | Smart2 |

---

[5] Crandall did originally allege that an armband is also the material, but conceded in deposition that it has no evidence that GreatCall sells any such armbands. Ex. D at 73:24-7.  Thus, GreatCall cannot be liable for something it does not sell and that a user may select.



Any juror can see that the hard plastic material on the outside of the smartphone does not have the same shape, outline or contour of the hand. Ex. J. ¶¶37, 39-40.

Despite the Court's construction, Crandall contends that this "material" limitation is met with any material that is "sized to fit within a user's hand such that the user is able to hold the Smartphone and can be held in the hand" and the "Housing is ergonomically shaped such that it is specifically sized to have the same shape, outline or contour of a user's fingers, thumb and hand when the hand is holding the Housing in such manner." Ex. C at 3-4.  In looking at the pictures of GreatCall's phones with an outer housing, there is no ergonomic contouring, like a groove, or shape that is the same as the fingers, thumb or even the hand to rest those appendages.  Ex. J ¶ 39.

To the extent Crandall's "holding in the hand" theory meets the Court's construction—which GreatCall contests it does not—GreatCall then (1) requests leave to amend the Court's construction to preserve validity or (2) requests to invalidate the claim for lack of written description.  The '789 Patent is clear that the invention is meant to be worn or mounted such that the user's hands are free to engage in other activities.  The excerpt above with the attested problem and solution of the '789 Patent is clear in repeatedly stating that:

- "Consider the example where an implemented self-defense system includes a piece of material that wraps around a person's arm or hand" (Ex. A at 5:3-6);

- "in so much as the device is worn on the user's arm, the user does not need to spend precious seconds during an attack removing the device from his pocket, nor does the user need to constantly carry the device in his hand when he is not being attacked" (*Id.* at 5:20-24);

- "the device is comfortably worn on the user's arm, or in the back of the user's hand (e.g., opposite the palm region), such that the user's hands are free to engage in other activities"  (*Id.* at 5:25-27); and



- "the present technology has a significant degree of utility for law enforcement officers, who must have their hands free to activate their primary weapons)" (*Id.* at 5:35-38).

Thus, the only examples of the material sized to conform to an appendage discussed in the specification is one that wraps or worn such that the user's hands are free. Furthermore, the '789 Patent identifies the prior problem with standard pepper spray device that needed to held by the user in his or her hand or taken out of the pocket and held in hand and thus, the remedy in its invention is worn or wrapped to be immediately available keep the hands free. *See id.* at 4:42-5:43. Thus, a POSITA would understand the '789 Patent to preclude devices that must be carried in the hand for an extended period of time, such as smartphones, standard pepper spray and flashlights. Ex. I ¶¶ 251-254, Ex. J ¶ 28, 43. Put differently, there is no part of the specification that would show that the inventor actually had possession of a hard material that needed to be held in the hand as one being "material sized to conform to an appendage" and the claims are invalid for lacking written description. *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158 (Fed. Cir. 1998) (reversing district court's decision of no invalidity where the patent only disclosed conical cup to distinguish prior art and had no disclosure of any other shape and thus lacked written description for any other functionally equivalent shapes). Thus, if Crandall's infringement theory is entertained, either the construction must be revised to exclude hard material and those that are held in the hand or all claims of the '789 Patent must be invalid for lacking written description.

In sum, there is either (1) no infringement with the current construction because Housing does not have the same shape, outline or contour of the hand or amended construction excludes hard materials that are held in the hand, or (2) invalidity of all asserted claims for lack of written description.

### 2.      Lively Wearable Device Is Not "Pressure Sensor Unit"

All of the asserted claims require "pressure sensor unit … configured to



generate a pressure input signal" because that is a limitation in both independent claims 1 and 17.  The Court construed "pressure sensor unit" as a device containing one or more pressure sensors that senses applied pressure and generates an electronic, electromagnetic or optical signal.  Doc. No. 35 at 2334 (¶ 2).

Crandall contends that the Urgent Response Button of the Lively Wearable Device meets this limitation. Ex. C at 6.  However, in its final contentions, Crandall never identifies a pressure sensor in the Urgent Response Button or that the Urgent Response button generates "a pressure input signal" with respect to claims 1 and 17. Ex. J ¶¶ 31, 47, 85.   All it provides is that "the Lively Wearable Device generates a signal when a user pushes (by exerting physical pressure on) the Urgent Response Button." Ex. C at 7.  Then, as if conceding literal infringement, Crandall claims "[t]he Lively Wearable Device is equivalent to a 'pressure sensor unit,' as claimed, at least because the Lively Wearable Device performs the same function, in substantially the same way, to yield substantially the same result, as indicated herein." *Id.* at 8.

Crandall has no evidence to support literal infringement or by equivalents. Crandall did not provide any expert testimony or report or statements per Rule 26(a)(2) and Scheduling Order.  Maune Decl. ¶ 10.  Crandall has never worked designing or testing pressure sensors.  Ex. F at 15:12-19:1.  Thus, conclusory statements or baseless assumptions cannot be used to oppose finding of summary judgment. *TechSearch, L.L.C.*, 286 F.3d at 1372.

Crandall defines "sensor" as "a device that detects or measures something by converting nonelectrical energy to electrical energy.  Doc. No. 31 at 1899, Ex. J ¶ 48.  A sensor is a device that measures a physical quantity (such as pressure) and delivers a signal that is a reflection of that physical quantity. Ex. J. ¶ 48.  For example, the greater the pressure applied, the higher the generated voltage produced.

The Urgent Response Button of the Lively Wearable Device does not include a pressure sensor. *Id.* ¶ 49.  The Urgent Response button comprises a



KMR231GLFS series microminiture SMT top actuated switch. *Id.* Applying enough force on the top of the button to cause the button to travel 0.25mm +/- 0.1 mm ultimately making an electrical contact closing the electrical circuit. The switch does not measure the pressure, according to Crandall's definition. *Id.* It just makes an electrical connection. *Id.*

A POSITA understands fundamentally the difference between pressure sensors on the one hand and switches and mechanical buttons on the other hand, especially in view of the '789 Patent specification that discusses sensing applied pressures which indicate an analog pressure sensor. Ex. I ¶¶ 66, 69, Ex. J ¶50. "For an engineer, generally speaking a 'sensor' is a mechanism that transforms one physical stimulus (here, pressure) into another one which is more amenable to being read or interpreted." Ex. I ¶ 69, Ex. J ¶ 51 (providing examples of pressure sensors). In contrast, an electrical switch or push button is a "device for making, breaking, or changing the connections in an electrical circuit" that can be configured to react to force (which is different from pressure technically[6]) in the sense that pressing the switch at a given level then makes the electrical connection. Ex. J ¶ 52. This difference is further confirmed by the fact that the '789 Patent distinguishes between pressure sensor for the "pressure sensor unit" and the push button for the "manual selector." *Id.* ¶ 70. Thus, the general definition of a switch or button to a POSITA fits "manual selector" described and used in asserted claims 8 and 17 of the '789 Patent. *Id.* ¶ 72. A POSITA will not consider the switches and buttons to be part of any "pressure sensor unit." *Id.* ¶ 73.

The Urgent Response Button of the Lively Wearable Device does not measure anything, let alone pressure. Ex. J ¶ 56. The result of the button is either logic high or zero. *Id.* For activation, the switch requires a 3.0 Newton of force that

---

[6] The inventor understood the difference between pressure and force since it used pressure with "pressure sensor unit" and force with the "manual selector" described as push button. Ex. A, Cl. 15:50-52.

DEFENDANT'S MEMO OF P&AS ISO MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-0139-CAB-MDD

is solely a function of the spring/gullwings on the switch that counteract the travel of the contacts. *Id.* The same connection will be made if 4 Newtons or 10 Newtons of force were applied to the button. *Id.* Therefore, it would be inaccurate for this switch to be characterized as a "pressure sensor" because it does not measure any pressure and any electrical output is not "based on applied pressure" to the button. If there is enough force, then electrical contact is made. *Id.*

For all these reasons, there is no pressure sensor and thus no "pressure sensor unit" in GreatCall's Lively Wearable Device. Ex. J ¶ 58. The Court should grant summary judgment of no infringement of all of the asserted claims.

### 3. Alternatively, Asserted Claims Are Invalid for Lack of Written Description or Enablement

As discussed above, the '789 Patent explicitly distinguishes between pressure, pressure sensor, and pressure sensor unit on the one hand and force, push buttons and manual selectors on the other hand. There is no disclosure that supports switches and push buttons to be considered as part of a "pressure sensor unit" and not the "manual selector." In view of these descriptions (or lack thereof), a POSITA would not consider buttons and switches as "pressure sensors" for the "pressure sensor unit" recited in the claims and as construed by the Court. Ex. I ¶ 73, Ex. J ¶ 55. If the buttons and switches are considered as "pressure sensors" and "pressure sensor unit," then all asserted claims are invalid for lack of written description and enablement. *Id.* ¶ 255.

### 4. Crandall Cannot Establish a "Defense Unit"

All asserted claims contain a "defense unit" as a limitation. The Court found "defense unit" to be subject to §112(6) such that "the function of the defense unit is to initiate a 'defense event' in response to a pressure input signal or manual execution signal." Doc. No. 35 at 2335. Further, the "defense unit" is limited to "one or more of the disclosed arrangements that can initiate one or more of the defined events the patentee identified as 'defense events.'" *Id.* (unbolded). The



Court then listed the defense events and components that initiate defense events, while also noting that both independent claims further require a defense unit that "is 1) coupled to the material sized to conform to an appendage, and 2) integrated with a wireless receiver, and for [claim] 17 is also communicatively associated with a manual selector."  *Id.* at 2335-2336.

Crandall cannot show that GreatCall's smartphones, which it contends have the "defense unit," has (1) identical function or (2) the structure arrangements disclosed in the '789 Patent.  Once a term is found to be limited to §112(6), the court must "compare the accused structure *with the disclosed structure*, and must find equivalent *structure* as well as *identity* of claimed *function* for that structure."  *Chiuminatta*, 145 F.3d at 1308 (citations omitted, italics in original).

Crandall cannot show how the accused Smartphones are equivalent to the disclose arrangements in the '789 patent specification to have the identical function of initiating a defense event in response to a pressure input signal or manual execution signal.  Crandall contends that GreatCall's products contain a "defense unit" because, in essence, smartphones have microphones, GPS, digital camera, and that "collectively function to initiate a 'defense event,'" that is smartphones can record and transmit information and sound an alarm.  Ex. C at 9-13.  There is no additional detail; likely because Crandall never purchased or inspected GreatCall's smartphones or conducted discovery from third-party manufacturers of the phones.  Ex. D at 53:11-58:24; 60:4-8.  Without evidence, he cannot show 112(6) infringement.

Furthermore, the specification clearly identifies only one arrangement for performing the function of initiating a defense unit in response to a pressure input signal or manual execution signal.  Figures 24, 26, 28, 30 and 32 that the Court identified as arrangement for various components for defense units are identical, except for the number of 2410, which is numbered as 2610, 2810, 3010 and 3220 in the latter figures, as well as the similar pattern for 2420, 2430, and 2460.







FIG. 24

Figure 24 is provided above as representative example.  All figures though identify 120 as the material that conforms to appendage 130, 1210 as the pressure sensor unit that generates 1230 pressure input signal, 1920 as the manual execution signal from the 1910 manual selector, and then the unit in position of 2410 generates some signal 2430 to an Entity[7] 2470 via 2450.  Ex. A at 16:51-67, 17:16-23, 17:50-58, 18:16-27, 18:53-19:20, Figs. 24, 26, 28, 30, 32.  This is the arrangement disclosed.

Crandall cannot show that GreatCall's combination of products have this arrangement.  Ex. J ¶ 62.  Actually, Crandall's allegation is to the contrary: for example, Lively Wearable Device is supposedly the "pressure sensor unit" equivalent to 1210 in Fig. 24, but that is not on the Housing of the Smartphone, which is allegedly the "material" (120 in Fig. 24).  *Id.*  Furthermore, as discussed above, Crandall does not identify what is "pressure input signal" in the accused devices, and thus cannot show GreatCall's devices have such a signal that initiates

---

[7]  Crandall alleges that 5Star Agents are the "Entity" that receives the transmitted information.  Ex. C at 14.

the defense event—required function of "defense unit."  Also, Crandall cannot show component 2410 (e.g. microphone, GPS) is directly activated by whatever signal comes from pushing the Lively Wearable Device as required under construction of "defense unit."  Crandall also cannot show equivalence when Mr. Crandall already knew of smartphones but failed to disclose it in the '789 patent.  *See Chiuminatta*, 145 F.3d at 1309, 1311 (finding 112(6) equivalence limited to narrow insubstantial difference and holding patent owner failed to make such showing; also finding equivalence cannot cover technologies that pre-date the invention when known by the inventor and "could readily have been disclosed in the patent").

For all these reasons, there is no "defense unit" and summary judgment of no infringement of all asserted claims should be granted.

### 5.    Crandall Cannot Show GreatCall's Smartphones Generate "voltage differential" above 50kV

Dependent claims 3 and 9 require at least one "conductive energy device" comprising "two electrodes" and "configured to generate a voltage differential."  The Court construed "voltage differential" generated by the conductive energy device to be above 50 kilovolts to stun and disable.  Doc. No. 35 at 2336.  Crandall has no evidence that shows GreatCall's smartphones generating voltage differential above 50 kV.  *See* Ex. J ¶ 75.  Crandall's designee testified that "I am unaware of a smartphone processor that outputs 50,000 volts or more of electricity" or smartphones used to stun or disable.  Ex. D at 83:15-17, 86:7-10.  Crandall also cannot show infringement by equivalents when as explained above it has no expert, its sole employee (who would not be an independent expert) has never worked on smartphones, and when its designee for 30(b)(6) deposition admitted that the purpose of a smartphone processor was **not** to have a voltage differential to stun and disable and is unaware of any signals in a smartphone that is used to stun or disable. *Id.* at 82:14-18, 84:18-21.  Summary judgment of no infringement of claims 3 and 9 should be granted.



DEFENDANT'S MEMO OF P&AS ISO MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-0139-CAB-MDD

### 6. Crandall Cannot Show There is any "Manual Selector" that Generates a "Manual Execution Signal"

Independent claim 17 and claim 8 which depends on claim 1, both claims 8 and 17 require a "manual selector" that generates a "manual execution signal" that initiates a defense event.  The Court construed "manual selector" as subject to § 112(6) as a push button that may be recessed as described in Col. 15:24, 30-40, 58-67 and shown in Figs. 19 (1910), 21A (2100), 21B (2100), and with the function of "configured to generate a manual execution signal."  Doc. No. 35 at 2337.

Crandall alleges that push buttons, such as the power button, on a smartphone is the "manual selector."  Ex. C at 23, 35-36; Ex. D at 87:1-9.  However, Crandall has no evidence that any of the buttons on GreatCall's smartphones generate a manual execution signal that initiates a defense event.  Ex. D at 87:10-15.  Crandall may argue that electrical signals generated from pushing a button constitute a manual execution signal.  That cannot be true in light of the '789 Patent that distinguishes manual execution signal from automatic execution signals, which is described as being generated from comparators that compare electronic signals and voltages.  Ex. A at 13:21-20; 1:52-54, 13:7-11.  Moreover, Crandall has no evidence that the power button (or any other push button) of the smartphone initiates the defense events construed by the Court to be, for example, spraying a substance, projecting a projectile, sounding an alarm, capture information pertaining to the emergency event or routing the captured information to a preselected emergency personnel.  Accordingly, there is no manual selector that generates manual execution signal that initiates defense events in GreatCall's products.  Summary judgment of no infringement of claims 8 and 17 should be granted.



DEFENDANT'S MEMO OF P&AS ISO MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:18-CV-0139-CAB-MDD

1   DATED:  November 27, 2019    Respectfully submitted,

2                                KILPATRICK TOWNSEND & STOCKTON
                                 LLP
3

4                                By:/s/ Megan M. Chung
5                                    MEGAN M. CHUNG

6                                Attorneys for Defendant
                                 GREATCALL INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

72639047V.2

